NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

----------------------------------------------------
REICHHOLD, INC.,                         :
                                             :
                   Plaintiff,           :         Civ. No. 03-453 (DRD)
                                             :
           v.                               :
                                             :
UNITED STATES METALS REFINING    :         **O P I N I O N**
COMPANY, et al.,                         :
                                             :
                  Defendants.        :
                                             :
----------------------------------------------------

EPSTEIN BECKER & GREEN, P.C.
William A. Ruskin, Esq.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102-5003

*Attorneys for Plaintiff Reichhold, Inc.*


McCARTER & ENGLISH, LLP
William S. Greenberg, Esq.
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, New Jersey 07101-0652

*Attorneys for Defendants United States Metal Refining Company, et al.*


**DEBEVOISE, Senior District Judge**

### I. BACKGROUND AND PROCEDURAL HISTORY

The initial complaint in this action was instituted by Reichhold, Inc. ("Reichhold" or

1

"Plaintiff") against United States Metals Refining Company on January 31, 2003[1], alleging violations of the Comprehensive Environmental Response, Compensation and Liability Act (hereinafter "CERCLA"), 42 U.S.C. §§ 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. 99-499; and the New Jersey Spill Compensation and Control Act (hereinafter "Spill Act"), N.J. Stat. Ann. §§ 58:10-23.11 et seq.

The Complaint seeks recovery for damages suffered, and response costs incurred to correct and mitigate releases or threatened releases of hazardous substances from properties in or near Carteret, New Jersey; contribution from Defendants for their share of response costs expended and that will be expended in the future at the former Reichhold property (the "Site"); and declaratory judgment finding Defendants liable for future cleanup costs incurred at the Site.[2]

On May 17, 2004, USMR brought a counterclaim against Reichhold for contribution and a declaration of rights under CERCLA and the Spill Act and filed a third-party complaint for contribution against Port Reading-Carteret ("PRC"), Bayer Corporation ("Bayer/Lanxess")[3], CP Hall Company ("CP Hall"), C.P.H. Sub. II, Inc. ("CPH II"), and Staflex Specialty Esters, Inc. ("Staflex") (collectively, "Third Party Defendants"). By orders dated October 27, 2004 and

---

[1] The initial action only included United States Metals Refining Company, and an amended complaint filed in May 2004 (the "Complaint") added several entities affiliated with United States Metals Refining Company, including Cyprus Amax Minerals Company ("Cyprus Amax"). United States Metals Refining Company and those entities will be collectively referred to as "USMR" or "Defendants".

[2] A detailed account of the Site and Plaintiff's claims are set forth in the court's February 22, 2007 opinion (the "Daubert Opinion") and need not be repeated here.

[3] Lanxess Corporation, as successor-in-interest to Staflex Specialty Esters, Inc., states that it was misidentified in USMR's Third Party Complaint as "Bayer Corporation".

December 7, 2004, the court dismissed USMR's third-party complaint against the Third Party Defendants.

By order dated February 8, 2007, the Magistrate Judge denied Plaintiff's request for further discovery and to supplement its expert reports.

On February 9, 2007, the court held a Daubert hearing with respect to several motions by the parties seeking to preclude certain opinion and expert testimony. By opinion and order dated February 22, 2007, the court granted in part and denied in part, the motions.

Thereafter, Plaintiff appealed that portion of the Magistrate Judge's February 8, 2007 order that denied Plaintiff's request for further discovery and to supplement its expert reports. Additionally, Plaintiff filed a motion for leave to file a motion for reconsideration of certain rulings in the Daubert Opinion. By order dated May 8, 2007, the court affirmed in part and reversed in part the Magistrate Judge's February 8, 2007 order and denied Plaintiff's motion for leave to file a motion for reconsideration. The May 8, 2007 order, *inter alia*, permitted Plaintiff to supplement Robert Pearson's expert report with respect to the Arthur Kill[4].

Defendants now move to dismiss Plaintiff's claim for declaratory relief relating to the Arthur Kill. For the reasons stated below, Defendants' motion will be granted.

## II. DISCUSSION

---

[4]Although the court found that the supplement addressed Plaintiff's claim for declaratory judgment relief requested in the Complaint, the court did not address whether there exists an actual case or controversy to warrant declaratory relief.

**A.    Standard for Dismissal under Fed. R. Civ. P. 12(b)(1)[5]**

A motion to dismiss pursuant to Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

> The defense of lack of subject-matter jurisdiction may be asserted "at any time by any interested party, either in the answer, or in the form of a suggestion to the court prior to final judgment. After final judgment it may be interposed as a motion for relief from the judgment under Rule 60(b)(4). Lack of subject-matter jurisdiction may also be asserted at any time by the court, sua sponte, either at the trial or appellate level."

Cospito v. Califano, 89 F.R.D. 374, 379 (D.N.J. 1981) (quoting C. Wright & A. Miller, 5 Federal Practice & Procedure § 1350 at 544-45 (1969)). An action is properly dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction "if the action does not ' " arise under" the Federal Constitution, laws or treaties . . . , or is not a "case or controversy" . . . .' " Id. (quoting Baker v. Carr, 369 U.S. 186, 198 (1961).

In contrast to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) where the court must accept all allegations as true, on a motion to dismiss for lack of

---

[5] In its brief, Plaintiff points out that Defendants do not cite to any rule in their notice of motion or in their brief. Although Defendants characterize their motion as a "motion to dismiss," Plaintiff contends that Defendants appear to be moving for summary judgment. Plaintiff argues that if that is the case, the court should deny their motion for failure to furnish a statement of material facts pursuant to L. Civ. R. 56.1. Plaintiff adds, in a footnote, that if the court does consider Defendants' motion as one to dismiss, the court should convert it to one for summary judgment under Fed. R. Civ. P. 56 because the parties have presented matters outside of the pleadings. Because the court considers the motion as one to dismiss pursuant to Rule 12(b)(1), Defendants were not required to furnish a Rule 56.1 statement. Additionally, because Rule 56 only requires that a Rule 12(b)(6) motion be treated as one for summary judgment where the parties have presented matters outside of the pleadings, the court will not convert Defendants' motion to a summary judgment motion.

4

subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Additionally, Plaintiff has "the burden of proof that jurisdiction does in fact exist." Id.

**B.      Case or Controversy**

Under the Declaratory Judgment Act, a party seeking declaratory judgment must demonstrate the existence of an actual case or controversy. 28 U.S.C. 2201(a); Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95 (1993). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. Thus, "[w]hether there is an actual controversy within the meaning of the Act is a question which turns on the facts of each individual case." Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am., 257 F.2d 485, 489 (3d Cir. 1958).

In some cases, a declaration is sought on the legal consequences of some act that may or may not occur. "A double contingency is said to exist when a declaration is sought about the legal consequences of future conduct, since the conduct may not take place and if it does the

5

other party may not challenge it." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2757 (3d ed. 1983). It has been suggested that those cases are inappropriate for a declaratory judgment. Id.

In D'Imperio v. U.S., 575 F. Supp. 248 (D.N.J. 1983), the plaintiffs were owners of a tract of land that was found to be contaminated. After the EPA had discovered the contamination, it sent a letter to the plaintiffs. The court described the letter as follows:

> In a letter dated March 18, 1982, the EPA advised the D'Imperios that "conditions at the D'Imperio site have resulted in releases or threatened releases of hazardous substances . . . which may present an imminent and substantial endangerment to the public health"; that the EPA had determined that Dr. Francesco D'Imperio "may be a responsible party with respect to the site"; and that if he failed to undertake an investigation of the site as a first step toward remedial activity, he "may be held liable under section 107 of CERCLA [42 U.S.C. § 9607] for all costs incurred by the United States Government in connection with the site."

Id. at 250.

In their complaint, the plaintiffs sought, *inter alia*, a declaratory judgment to the effect that they were not liable under CERCLA for any cost of cleanup of the contaminated site. The defendant moved to dismiss on the grounds that the controversy was not yet ripe for disposition.

The court, in dismissing plaintiff's prayer for a declaration of non-liability, found that "not everyone who fears that a government agency or private party may seek to compel enforcement of a law or agreement may bring suit under the Declaratory Judgment Act." Id. at 251. The court explained that although it did not consider the plaintiff's fears to be imaginary or speculative, it found that in light of the nature of the EPA letter, those fears were not "based on

6

considerations sufficiently immediate to warrant a declaration of non-liability." Id. The court found that the letter did not require any action from the plaintiffs and that the government's investigation was "not for the purpose of assigning liability among the parties, but for the purpose of planning for a cleanup of the site, if necessary." Id. The court concluded that the case was "a long way from being referred to the Attorney General's office for action under § 9607." Id. at 252.[6]

Reichhold is in a similar situation as the plaintiffs in D'Imperio. Here, although Reichhold contends that the New Jersey Attorney General advised that the State "had plans to seek NRD damage from Reichhold for the Arthur Kill[,]" (Pl.'s Br. 50-51) Reichhold has not established that the claim is immediate, or whether it will ever exist at all. Instead, Reichhold relies on a declaration by its NRD counsel, Marty M. Judge, ("Judge Decl.") which does not even mention the Arthur Kill. Although Judge describes certain conversations that occurred between himself and Deputy Attorney General Richard Engel, Judge states only that Mr. Engel informed him that "his office had received a referral from the NJDEP to seek NRD recovery against Reichhold for the Carteret, New Jersey facility." (Judge Decl. ¶ 3, Ruskin Cert., Ex. FF).

Additionally, Reichhold adds that "[a]s proof that the State is serious about focusing on the Arthur Kill and Carteret area, dozens of claims for natural resource damages were filed by NJDEP just last month." (Pl.'s Br. 51). Although this statement appears to be true, it does not establish that a claim against Reichhold with respect to the Arthur Kill is inevitable or

---

[6]The court also dismissed the claims against two private defendants. The court found that it was "not going to adjudicate the issue of the plaintiffs' non-liability in this purely private context where it has declined to do so in the case between the plaintiffs and the government." Id. at 254.

7

immediate.

Thus, because Reichhold has not demonstrated that there is a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, any claim for declaratory relief relating to the Arthur Kill will be dismissed.

### III. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the claim relating to the Arthur Kill will be granted. The court will enter an order implementing this opinion.


/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:        August 13, 2007